IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TYRONE DARNELL BUTLER        :

    v.                         :  Civil Action No. DKC 16-0330
                                  Criminal Case No. DKC 12-0116

UNITED STATES OF AMERICA     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution is the motion to vacate sentence pursuant to 28 U.S.C. § 2255 (ECF No. 53) filed by Petitioner Tyrone Butler ("Petitioner") and the unopposed motion to seal (ECF No. 69) filed by the United States. The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons the motion to vacate will be denied and the motion to seal will be granted.

**I.  Background**

On March 5, 2012, the Grand Jury returned an indictment charging Petitioner with conspiracy to distribute and possess with intent to distribute 28 grams or more of cocaine base. (ECF No. 1). On March 6, 2014, Petitioner pled guilty, without a plea agreement, to the charged offense. (ECF No. 70-1). On June 11, 2014, the United States filed a sentencing memorandum noting "[t]he seriousness of the [Petitioner's] offense conduct and criminal history, and the sentencing objectives of punishment, deterrence,

and protection of the community," and recommended "a sentence of 170 months." (ECF No. 29, at 5). Petitioner's counsel, William Welch ("Mr. Welch"), filed a sentencing memorandum on Petitioner's behalf on November 12, 2014, arguing that Petitioner "should not be sentenced as a 'career offender,' facing 188 – 235 months (fifteen and a half to almost twenty years) in federal prison[.]" (ECF No. 36, at 2). This argument was based on a potential challenge to one of Petitioner's state convictions, which Petitioner alleged was requisite to his career offender status. (*Id.*). Petitioner instead asked for "the five year minimum required by 21 U.S.C. § 841[.]" (*Id.*). The United States filed a supplemental sentencing memorandum in response, opposing Petitioner's "request for a downward variance." (ECF No. 40, at 6). The United States argued that Petitioner's state conviction at issue was not necessary to categorize him as a career offender, and "note[d] that U.S.S.G. § 4B1.3(b)(3)(A) specifically states that '[t]he extent of a downward departure under this subsection for a career offender within the meaning of 4B1.1 (career Offender) may not exceed one criminal history category.'" (*Id.*). The United States recommended that "[a]s a career offender, [Petitioner's] offense level is 34, pursuant to U.S.S.G. § 4B1.1(1), with a criminal history category VI" and that "[a]fter acceptance of

responsibility, [Petitioner's] offense level is 31/VI, producing a range of imprisonment of 188-235 months." (*Id.*).

On February 2, 2015, the court sentenced Mr. Butler to a term of 96 months imprisonment followed by 4 years of supervised release. At sentencing, the court adopted the factual findings and guideline applications in the Presentence Report ("PSR") and determined that Petitioner's total offense level was 31 and that he was a career offender with a criminal history category of VI.

On the same date, Mr. Butler was sentenced in Criminal No. DKC 01-0272 to a 24 month sentence of imprisonment, consecutive to the sentence imposed in case number DKC 12-0116, for the conviction of a new offense while on supervised release, which was a violation of his terms of supervised release.

On February 4, 2016, Petitioner filed a motion for writ of habeas corpus to correct, set aside, or vacate his conviction due to ineffective assistance of counsel under 28 U.S.C. § 2255. (ECF No. 53-5). On July 26, 2016, the United States filed a response (ECF No. 68), and on August 22, 2016 Petitioner replied (ECF No. 74).

**II. Standard for Motion to Vacate Pursuant to 28 U.S.C. § 2255**

Title 28 U.S.C. § 2255 requires a petitioner asserting constitutional error to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or

3

laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." On the other hand, "[t]he scope of review of non-constitutional error is more limited than that of constitutional error; a nonconstitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" *United States v. Mikalajunas*, 186 F.3d 490, 495-96 (4th Cir. 1999) (internal citation omitted).

While a *pro se* movant is entitled to have his arguments reviewed with appropriate consideration, *see Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978), *cert. denied*, 439 U.S. 970 (1978), if the § 2255 motion, along with the files and records of the case, conclusively shows that he is entitled to no relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. 28 U.S.C. § 2255.

A conviction and sentence based on a guilty plea can only be collaterally attacked on relatively narrow grounds, including that the plea was not voluntary, that the petitioner was not advised by competent counsel, or that the court clearly lacked authority to impose the sentence. *United States v. Broce*, 488 U.S. 563, 569 (1989). In addition, statements made by a defendant during a

4

hearing, as mandated by Fed.R.Crim.P. 11, to accept his guilty plea are subject to a strong presumption of veracity, and challenges under § 2255 that contradict these statements may generally be dismissed without an evidentiary hearing:

> "[A] defendant's solemn declarations in open court . . . 'carry a strong presumption of verity,'" . . . because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. . . . "Indeed, because they do carry such a presumption, they present 'a formidable barrier in any subsequent collateral proceedings.'" . . . Thus, in the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always "palpably incredible" and "patently frivolous or false." . . . Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.

*United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005) (internal citations omitted).

**III. Analysis**

To prevail on a claim of ineffective assistance of counsel, a petitioner must first show that "counsel's efforts were objectively unreasonable when measured against prevailing professional norms." *Frazer v. South Carolina*, 430 F.3d 696, 703 (4th Cir. 2005). In evaluating objective unreasonableness, "a

5

court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 690, but counsel also "has a duty to make reasonable investigations or to make a reasonable decision that [] particular investigations [are] unnecessary," *id.* at 691. In addition, a petitioner must show prejudice, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id.* at 694.

Petitioner appears to raise seven claims of ineffective assistance by his trial counsel. First, Petitioner alleges that Mr. Welch was ineffective because he promised Petitioner that he would receive a "51-71 month sentence" if he pleaded guilty (ECF Nos. 53-5, at 5; 53-2, at 4) and "coerced Petitioner to plead guilty" (ECF No. 53-1, at 2). Second, Petitioner alleges that Mr. Welch was an ineffective counsel "based on the manner in which [Mr. Welch] misinformed him of the federal evidence, pertaining to the statement of facts, resulting in Petitioner taking an unintelligent plea" (ECF No. 53, at 13) and that Mr. Welch did not allow Petitioner to review the PSR (ECF No. 53-1, at 7). Third,

Mr. Welch was ineffective because he "advised [Petitioner] to plead guilty without having in his possession or having knowledge of what was presented to the grand jury." (ECF No. 53, at 13). Fourth, Petitioner claims that "had [Mr. Welch] appropriately investigated the evidence by challenging the information in [the United States'] statement of facts, [Mr. Welch] would have known that the Petitioner is actually innocent of being responsible for [c]onspiracy to [sell] 28 grams or more of [c]ocaine [b]ase." (ECF No. 53-1, at 5). Fifth, Mr. Welch was ineffective because he persuaded Petitioner to "plead guilty to Career Offender's guideline (when in the end it was found that Petitioner did not qualify)[.]" (*Id.*, at 11). Sixth, Mr. Welch was ineffective because he "never contested [the United States'] theory of Petitioner conspiring with others to s[e]l[l] 28 grams or more of [c]ocaine [b]ase when, ironically, Petitioner was the only defendant charged with conspiracy who, according to [the United States], conspired with himself to s[e]l[l] 28 grams or more of Cocaine Base." (*Id.*, at 8). And Seventh, Mr. Welch was ineffective because he told Petitioner that he "filed a motion to [s]uppress the wiretap[,] [b]ut [] never informed the Petitioner of the wiretap results that the Court had ruled upon." (ECF Nos. 53-5, at 4; 53-2, at 3) (internal quotations omitted).

7

The United States opposes the Motion by reference to the record, an affidavit submitted by Mr. Welch, and an opinion granting the right to a belated appeal in state court. (ECF Nos. 68 & 70). Petitioner filed a reply on August 22, 2016. (ECF No. 74).

**A. Coerced plea & promised sentence**

Petitioner alleges that Mr. Welch was ineffective because he promised Petitioner that he would receive a "51-71 month sentence" if he pleaded guilty (ECF Nos. 53-5, at 5; 53-2, at 4) and "coerced Petitioner to plead guilty" (ECF No. 53-1, at 2). Mr. Welch states that he advised Petitioner that his guidelines would be 57 to 71 months if a prior state conviction was overturned and he accepted responsibility. (ECF No. 70-3, at 7).

At the plea hearing, Petitioner was specifically asked whether anyone had promised him what the sentencing guidelines would be. He answered "No, ma'am." (ECF No. 70-1, at 10). The court noted that "with regard to the new offense, the parties have not . . . entered into any agreements." At the conclusion of the plea hearing, Mr. Welch advised the court that he intended to investigate a prior state conviction and might file a petition for a writ of error coram nobis. (ECF No. 70-1, at 20).

Petitioner's right to plead not guilty was explained to him:

> THE COURT: First, you have the absolute right to plead not guilty. No one can make you come

> into court and enter a guilty plea. If you plead not guilty, you are presumed to be innocent. That means you cannot be found guilty unless there's a trial at which your guilt is proven beyond a reasonable doubt.

(ECF No. 70-1, at 11). Petitioner affirmed that he understood the rights he was forfeiting as a result of pleading guilty. (*Id.*, at 13). Also at the plea hearing, Petitioner affirmed that his guilty plea was voluntary:

> THE COURT: How many times have you met with Mr. Welch to talk about the charge in the new Indictment as well as the supervised release violation and then, ultimately, your decision to plead guilty?
>
> THE DEFENDANT: Four times.
>
> THE COURT: Four times. Has he always had the time that you thought was necessary to talk with you about this case?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Has he answered all of your questions?
>
> THE DEFENDANT: Yes ma'am.
>
> THE COURT: Are you satisfied with the help he has provided you in this case?
>
> THE DEFENDANT: Yes, ma'am
>
> THE COURT: Has anybody made any promise to you concerning these matters in order to induce you to plead guilty?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: Have you been threatened in any way in order to induce you to plead guilty?

>THE DEFENDANT: No, ma'am.

(*Id.*, at 18). Petitioner was then asked, "Is it still your desire to plead guilty to the offense and to admit the violation of supervised release?" To which Petitioner responded "Yes, ma'am." (*Id.*, at 19). It was then determined:

> THE COURT: I am satisfied that you do understand what it means to plead guilty and to make the admission, and that you are doing so knowingly. You are pleading guilty because you acknowledge your responsibility and there haven't been any improper promises or any threats. And I believe your pleas are being entered voluntarily, as well as the admissions being made voluntarily.

(*Id.*). It is clear from Petitioner's own statements that his guilty plea was not coerced or given in exchange for a promise of particular guidelines or a lower sentence. As detailed above, absent "extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *Lemaster*, 403 F.3d at 221; *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy").

### B. Misinformed regarding United States' evidence and failure to review PSR

Petitioner claims that Mr. Welch provided ineffective assistance "based on the manner in which [Mr. Welch] misinformed him of the federal evidence, pertaining to the statement of facts, resulting in Petitioner taking an unintelligent plea" (ECF No. 53, at 13) and that Mr. Welch did not allow Petitioner to review the PSR (ECF No. 53-1, at 7). These claims, again, lack support.

At Petitioner's plea hearing, Petitioner acknowledged that he entered into certain stipulated facts, the Government recited those facts on the record, and Petitioner affirmed that those facts were correct:

> THE COURT: Okay. Before we move on, I'm going to ask Ms. Bressack to read those facts out loud. Please listen carefully, because when she's finished I'll ask you if you do agree the facts are true.
>
> MS. BRESSACK: Between no later than in or about July, 2010, and in or about September, 2010, Tyrone Darnell Butler conspired with others to distribute and possess with intent to distribute 28 grams or more of cocaine base, commonly known as crack.
>
> During the conspiracy, Mr. Butler sold and arranged the sale of crack cocaine to a confidential source on four separate occasions. On or about July 16th, 2010, Mr. Butler sold the confidential source 6.6 grams of crack cocaine. On or about July 28, 2010, Mr. Butler sold the confidential source 16.9 grams of crack cocaine.

>On or about August 17th, 2010, Mr. Butler arranged for Co-conspirator A to sell the confidential source 7.2 grams of crack cocaine. On or about September 23rd, 2010, Mr. Butler arranged for Co-conspirator A to sell the confidential source 6.1 grams of crack cocaine.
>
>The calls between Mr. Butler and the confidential source preceding these four sales of crack cocaine were recorded by law enforcement. In addition, law enforcement videotaped three of the four sales. 28 grams or more, but less than 112 grams of cocaine base, known as crack, was reasonably foreseeable and within the scope of Mr. Butler's agreement.
>
>\*   \*   \*
>
>THE COURT: Mr. Butler, did you hear those facts when they were read out loud?
>
>THE DEFENDANT: Yes, ma'am.
>
>THE COURT: Do you agree that all of those facts are true?
>
>THE DEFENDANT: Yes, ma'am.
>
>THE COURT: Do you agree you are, in fact, guilty of the offense set forth in the Indictment?
>
>THE DEFENDANT: Yes, ma'am.

(ECF No. 70-1, at 14-16).

At his sentencing hearing, Petitioner had the opportunity to raise any concerns regarding the presentence report but failed to do so:

>THE COURT: Now, today, the probation officer has updated, to some extent, the presentence report, and we will discuss those changes.

12

> But Mr. Welch, are you ready to proceed? Have
> you had a chance to review everything with the
> defendant?
>
> Mr. Welch: I have Your Honor. We are ready.

(ECF No. 46, at 3). Following Mr. Welch's affirmative statement, Petitioner sat silently and made no objection. (*Id.*).

Thus, Petitioner's statements at the plea colloquy and conduct at the sentencing hearing belie his current contentions.

### C. Failure to obtain and share Grand Jury evidence

Petitioner claims that Mr. Welch was ineffective because he "advised me to plead guilty without having in his possession or having knowledge of what was presented to the grand jury." (ECF No. 53, at 13). The law, however, does not support this claim. The United States Court of Appeals for the Fourth Circuit held, in *United States v. Anderson*, 481 F.2d 685, 692 (4th Cir. 1973), *aff'd*, 417 U.S. 211 (1974):

> Except for his own testimony, a defendant is
> not entitled of right to pre-trial access to
> the testimony before the grand jury: The
> obligation of the Government is merely to make
> available to the defendant the testimony of a
> witness before the grand jury at the
> conclusion of the direct testimony of such
> witness at trial and then only if the
> defendant shows a "particularized need" for
> such disclosure.

Further, "Federal Rule Crim. Proc. 6(e) codifies the requirement that grand jury activities generally be kept secret[.]" *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 219 n.9

13

(1979). "Although the purpose for grand jury secrecy originally was protection of the criminally accused against an overreaching Crown, . . . with time it came to be viewed as necessary for the proper functioning of the grand jury." *Id.* (internal citations omitted). Petitioner does not allege any exception to Federal Rule of Criminal Procedure 6 and offers no reason why he is entitled to grand jury evidence. Thus, Mr. Welch was not ineffective for failing to obtain grand jury evidence.

**D. Failure to object to quantity of base cocaine charged**

Petitioner claims that "had [Mr. Welch] appropriately investigated the evidence by challenging the information in [the United States'] statement of facts, [Mr. Welch] would have known that the Petitioner is actually innocent of being responsible for [c]onspiracy to [sell] 28 grams or more of [c]ocaine [b]ase." (ECF No. 53-1, at 5). Petitioner's sworn statements, again, do not support Petitioner's claim. Petitioner admitted to the accuracy of the stipulated facts at his plea hearing, detailed *supra*, which listed his sale of 6.6 and 16.9 grams of cocaine base and his arranged sales with Co-conspirator A of 7.2 and 6.1 grams of cocaine base. (ECF No. 70-1, at 14-15). Petitioner admitted to selling 23.5 grams of cocaine base and arranging for his co-conspirator to sell 13.3 grams of the same to the confidential informant. Further, the United States provided Petitioner with a

14

laboratory report from the Drug Enforcement Agency confirming these quantities. (ECF No. 68-3). Petitioner does not provide any factual support to the contrary. Attorneys "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success," *United States v. Mason*, 774 F.3d 824, 828 (4th Cir. 2014), and a lawyer's "strategic choices made after thorough investigation of law and facts . . . are virtually unchallengeable," *Strickland*, 466 U.S. at 690. Thus, Mr. Welch was not ineffective for failing to challenge the amounts of cocaine base in the stipulated facts.

**E. Misinformed Petitioner that he was a career offender**

Petitioner argues that his counsel was ineffective because he persuaded Petitioner to "plead guilty to Career Offender's guideline (when in the end it was found that Petitioner did not qualify)[.]" (ECF No. 53-1, at 11). Petitioner meets all prerequisites for Career Offender status, and thus, was properly classified as a Career Offender. To qualify as a Career Offender under U.S.S.G. § 4B1.1(a), a defendant must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." As an adult, Petitioner "has been convicted of two controlled substance offenses" and "a crime of violence." (ECF Nos. 27, at 5; 70-2, at 5). Further, Mr. Welch advocated for a variance from career offender guidelines for

15

Petitioner at sentencing and went so far as to challenge Petitioner's state conviction through a writ of *coram nobis*. If the challenge had been successful, Petitioner's state conviction might have been nullified and Mr. Welch may have been successful in declassifying Petitioner as a career offender. (ECF No. 46, at 4-5). These valiant efforts do not support Petitioner's claim that Mr. Welch improperly influenced him to plead guilty to Career Offender guidelines.

### F. Failure to object to conspiracy

Petitioner also argues that Mr. Welch was ineffective because he "never contested [the United States'] theory of Petitioner conspiring with others to s[e]l[l] 28 grams or more of [c]ocaine [b]ase when, ironically, Petitioner was the only defendant charged with conspiracy who, according to [the United States], conspired with himself to s[e]l[l] 28 grams or more of Cocaine Base." (ECF No. 53-1, at 8). This claim also fails. Petitioner affirmed the accuracy of the statement of facts read aloud at his plea hearing, which fully support the offense charged. (ECF No. 70-1, at 16) (Petitioner "conspired with others to distribute and possess with intent to distribute 28 grams or more of cocaine base." Petitioner "arranged for Co-conspirator A to sell the confidential source 7.2 grams of crack cocaine." Petitioner "arranged for Co-conspirator A to sell the confidential source 6.1 grams of crack cocaine.").

16

As further explained above, a lawyer's "strategic choices made after thorough investigation of law and facts . . . are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Mr. Welch's choice to not contest the conspiracy charge does not support a claim of ineffective counsel.

### G. Failure to resolve motion to suppress

Petitioner alleges that Mr. Welch was ineffective because he told Petitioner that he "filed a motion to [s]uppress the wiretap[,] [b]ut [] never informed the Petitioner of the wiretap results that the Court had ruled upon." (ECF Nos. 53-5, at 4; 53-2, at 3) (internal quotations omitted). Mr. Welch filed a motion to suppress wiretap evidence on January 28, 2014, on Petitioner's behalf. (ECF No. 22). This motion was never resolved, however, because Petitioner elected to plead guilty to the charged offenses on March 6, 2014. (ECF No. 70-1, at 19). Mr. Welch was not ineffective on these grounds.

## IV. Motion to Seal

The United States seeks to seal certain exhibits in connection with its response in opposition to Petitioner's motion to vacate. (ECF No. 68). The United States requests that exhibits A, B, and C be sealed because they contain lawyer-client communications with Petitioner, personal information pertaining to the Petitioner, indicate whether Petitioner cooperated in this case, and because

17

no alternatives to sealing these exhibits are available. (ECF No. 69). Accordingly, the unopposed motion to seal will be granted.

## V. Certificate of Appealability

A petitioner may not appeal this court's denial of relief under § 2255 unless it issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability will not issue unless the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *United States v. Hadden*, 475 F.3d 652, 659-60 (4th Cir. 2007). The court has assessed Petitioner's Motion to Vacate and finds that no reasonable jurist could find merit in any of the asserted claims. Accordingly, no certificate of appealability shall issue.

## VI. Conclusion

For the foregoing reasons, Defendant's motion to vacate sentence pursuant to 28 U.S.C. § 2255 (ECF No. 53) will be denied and the unopposed motion to seal (ECF No. 69) filed by the United States will be granted.

/s/
DEBORAH K. CHASANOW
United States District Judge
